```
                 IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ALABAMA
                          SOUTHERN DIVISION

DAVID J. STEWART,              }
                               }
     Plaintiff,                }
                               }       CIVIL ACTION NO.
v.                             }       06-AR-4842-S
                               }
MARGARET SPELLINGS, et al.,    }
                               }
     Defendants.               }
```

**MEMORANDUM OPINION**

Before the court is the motion of defendants, Margaret Spellings, who is the United States Secretary of Education ("Spellings"), and the Alabama Department of Rehabilitation Services ("ADRS") (together, "defendants"), for summary judgment in the above-entitled action brought by plaintiff, David J. Stewart ("Stewart"). For the reasons that follow, defendants' motion will be granted.

*Procedural History*

Stewart appeals to this court from a final agency action of the United States Department of Education pursuant to the Randolph-Sheppard Act, 20 U.S.C. § 107, *et seq.* (the "Act"). Stewart initiated administrative proceedings by filing a complaint on October 7, 2003 with the United States Department of Education ("DOE"). He had already exhausted the administrative proceedings available in the ADRS. Stewart, who is a duly licensed blind vendor under the Act, alleged in his October 7, 2003 complaint that the ADRS Business Enterprise Program violated the Act by removing

him from his contract as operator of the dining facility at Redstone Arsenal adjacent to Huntsville, Alabama, and by acting arbitrarily and capriciously. Stewart demanded that Spellings convene an arbitration panel to grant him injunctive and monetary relief. As required by the Act, the DOE convened an arbitration panel on July 19, 2005. On October 12, 2006, after a hearing, the three-member arbitration panel issued the following ruling, with one member dissenting:

* * * * *

> This matter involves the efforts to award the contract to operate the military dining hall at Redstone Arsenal to blind vendor, David Stewart, in 2003.
>
> On 11/13/02 the Alabama Department of Rehabilitation Services ("ADRS") Business Enterprise Program ("BEP") issued a memorandum regarding Facility Announcement No. 202-21 regarding the military dining hall at Redstone Arsenal in Huntsville. The outside military dining hall contractor at this location was and is KCA, Inc. ("KCA"). The blind vendor is required to enter into a joint venture with KCA to operated this facility. The prior blind vendor at this location since 1997 was Robert Kelly. The joint venture between Kelly and KCA at this location is called the K & K Joint Venture. Beginning 11/1/02, Kelly also began operating the dining hall at Maxwell Airforce Base in Montgomery, Alabama.
>
> On 1/7/03, Stewart received official written notification that he had been awarded the opportunity to operate the military dining hall at Redstone (Exhibits 3 and 4). At some point in January 2003 BEP suggested that Stewart meet with all parties involved. That meeting was held 2/4/03. At that meeting, Stewart indicated his wife could not work with him in this venture, as Kelly's wife had, and asked to receive two percent of the four percent general and administrative costs that had been going to KCA. Fred Anderson of KCA rejected that offer, based primarily on the existing fixed cost nature of the contract with the Army at Redstone, and insisted on

entering into a joint venture with Stewart on the exact same terms KCA had with Kelly, known as the K & K Joint Venture.  In fact, BEP gave Stewart a proposed operating agreement at this meeting that required Stewart to enter into a joint venture with KCA identical to the K & K terms.

About one week later, Stewart called KCA to talk with Anderson to ask when he would receive the joint venture documents proposed by KCA that Anderson, at the 2/4 meeting, said he would send to Stewart.  Anderson was out of town.  On 2/13/03, Ray Dennis, Director of BEP, wrote Stewart giving him a deadline of 2/21/03, eight calendar days away, to enter into all agreements and documents to operate Redstone (Exhibit 6).  That same day, 2/13/03, Stewart's attorney, Scott LaBarre wrote Dennis at BEP, without knowledge of Dennis' letter to Stewart, asking if Stewart was required to enter into the identical joint venture terms as Kelly had with KCA. Apparently, most if not all letters between the parties involved were by fax and thus received shortly after sent.

On 2/14/03, Dennis wrote LaBarre that Dennis needed a release from Stewart before he could communicate with LaBarre.  Stewart sent the executed release to Dennis on 2/18/03 (Exhibit 9).  That same day, 2/18/03, LaBarre wrote Dennis stating that Stewart did not refuse to sign the operating agreement with BEP but asked for clarification of terms, and stated Stewart had no gotten the proposed joint venture agreement from Anderson at KCA that Anderson said he would send to Stewart at the conclusion of the 2/4 meeting.  That letter from LaBarr to Dennis also indicated that Stewart intended to operate the Redstone dining hall facility.

Also that same day, 2/18/03, Dennis wrote LaBarre stating that BEP did not require that Stewart enter into the exact same joint venture terms and conditions with KCA that Kelly had, stating the terms of the joint venture were between Stewart and KCA.  That letter from Dennis to LaBarre also repeated for the second time the 2/21 deadline (Exhibit 11).

Sometime that same day, 2/18, Stewart talked with Anderson at KCA over the phone.  Anderson apparently indicated that he and KCA would not work at all with or agree to any terms with Stewart regarding the Redstone

dining hall facility.

On 2/19 LaBarre wrote Dennis again, informing Dennis that Anderson had told Stewart the day before that KCA would not work in any way whatsoever with Stewart, and requested the immediate help by BEP with this impasse between KCA and Stewart, and suggesting a conference call (Exhibit 12). That same day, 2/19, Dennis wrote LaBarre reiterating for the third time the 2/21 deadline or the Redstone facility would be offered to the next blind vendor in line.

On 2/20/03, Dennis sent Stewart a joint venture identical to K & K, with the only change being the substitution of Stewart's corporate name for that of Kelly, as a joint venture that would be acceptable to BEP. That joint venture document stated that it could not be changed unless KCA agreed, as long as BEP operates the dining facility at Redstone (Exhibit 14).

February 21 was the deadline day. LaBarre wrote Dennis that day asking for immediate help with the negotiations between Stewart and KCA, and stated again that Stewart could not negotiate or enter into a joint venture with KCA because KCA refused to do so with Stewart.

On 2/26/03, Dennis wrote LaBarre stating that BEP had bypassed Stewart and moved on to the next eligible blind vendor for the dining hall facility at Redstone. This was ultimately awarded to Ben Fordham who began operating the Redstone dining facility on 4/1/03 under the identical same terms as the joint venture between Kelly and KCA.

On 3/19/03, ADRS Commissioner Steve Shivers held the commissioner's conference as requested by LaBarre on 3/3 (Exhibit 17). On 4/1/03, Shivers issued his decision in favor of BEP (Exhibit 20). On 8/5/03, Hearing Officer Frank Jones conducted a full evidentiary hearing pursuant to Stewart's 4/2 request. On 9/5/03, James issued his opinion in favor of BEP.

The panel chairman was notified of his selection on 1/19/05. On 3/24/05 this matter was set for an arbitration hearing on 7/19/05. All parties had a full and complete opportunity to call and question witnesses, and present evidence and documents. There is no

4

arbitrability issue. The matter is properly before the arbitration panel for its decision. The transcript was received on 8/31/05. Post hearing briefs were received on 10/17 and 18 of 2005. The delay in issuing a more prompt decision from the panel has been caused by a hand injury suffered by the panel chairman in early 2006.

Section 20 U.S.C. Section 107d-4 of the Randolph-Shephard Act ("Act") reads as follows:

> "The Commissioner shall insure, through promulgation of appropriate regulations, that uniform and effective training programs, including on-the-job training, are provided for blind individuals, through services under the Rehabilitation Act of 1973. He shall further insure that State agencies provide programs for upward mobility (including further education and additional training or retraining for improved work opportunities) for all trainees under this chapter, and that follow-along services are provided to such trainees to assure that their maximum vocational potential is achieved."

The Administrative Code Rules of the Alabama Department of Rehabilitation Services states that licensed blind vendors selected for a facility must complete a final inventory and forfeit any agreement to operate as well as any right of possession, control, privilege, priority, or advantage over the vendor's current facility. Rule 795-7-4-.01(3)(q). Those rules require that a licensed blind vendor selected for a facility must execute an operating agreement for that facility. Rule 795-7-4-.01(3)(s). And the rules require that each licensed blind vendor must agree in writing to perform certain enumerated duties and responsibilities as a condition of participation in the program. Rule 795-7-10-.01.

Complainant's Position

Mr. Stewart contends that the Alabama BEP violated

5

the Randolph-Shephard Act by denying Stewart's "upward mobility" rights to achieve Stewart's "maximum vocational potential" when the Alabama BEP did not advocate for Stewart in the impasse between Stewart and KCA over the joint venture agreement, and on 2/13/03 set an arbitrary and capricious deadline fro receipt of the joint venture agreement and all other documents from Stewart by 2/21/03, only eight days later.

ADRS Position

The ADRS contends tah there is nothing in the Randolph-Shephard Act, its rules or regulations, that establishes, any duty, obligation or requirement that BEP intervene for or on behalf of Stewart in his joint venture negotiations with KCA (Transcript 114, 123 and 210). The Alabama BEP has never done this before for any blind vendor. Joint venture negotiations in Alabama have always been solely between the blind vendors and outside military dining hall contractors, such as KCA. The ADRS contends Stewart had plenty of time, approximately one-and-a-half months, between his 1/8/03 acceptance and the 2/21 deadline, to get the joint venture deal done with KCA; and that Stewart and/or his attorney were told three times of the 2/21 deadline, on 2/13, 2/18 and 2/19. The ADRS also points out that the contract with the Army at Redstone was a fixed price contract (Transcript 197). Thus, KCA was legally entitled to refuse to change the joint venture financial terms with Stewart until any new deal with the Army at that location, which in fact did occur in 2004 or 2005 with vendor Fordham and KCA (Transcript 220).

DISCUSSION

The Randolph-Shephard Act, its rules and regulations, give little or no guidance or specificity regarding the details and requirements of the Alabama BEP in such a situation of an impasse between the blind vendor and the dining hall contractor. At the 2/4 meeting, Stewart essentially demanded that fifty percent of the general and administrative costs that KCA was receiving under the fixed price contract be given to Stewart, in large part because Stewart's wife could not work with him at this location. KCA through Anderson refused to agree to this contractual modification primarily based on the fixed price nature of the contract with the Army. In addition, the management services

agreement between the ADRS and KCA states KCA is entitled to the compensation in the K & K joint venture even if Kelly is replaced.

Stewart was asking, requesting, insisting, demanding (pick your verb) that KCA cut its gross in half or go to the Army and renegotiate in midstream. KCA did not have to do that. BEP had no authority to force that. And the Army had no reason to agree to any changes.

While KCA and Stewart were free to agree to different joint venture terms, there is no requirement that they do so. Nothing in the Randolph-Shephard Act, its rules or regulations, clearly or specifically <u>requires</u> BEP to step into the refusal of KCA to deal or agree with Stewart to operate this facility and attempt to forge a breakthrough in the negotiations, or to force a vendor on a military dining hall contractor. Alabama BEP has never done this for any blind vendor under similar circumstances, so there is no binding past practice supporting Stewart's position.

On 2/13/03, Stewart and his attorney were notified they had eight more days to enter into a joint venture with KCA or BEP would move on to the next qualified blind vendor. While some may view that as too short a period of time, the panel cannot say as a matter of law or fact that it is a fatally unreasonable or short period of time for Stewart to get a deal done with KCA. Based on the evidence and the record, the panel holds that the eight-day advance notice of the deadline was reasonable, appropriate, not arbitrary, not capricious, proper and did not violate the Randolph-Shephard Act, its rules or regulations. The Act does not prohibit BEP from setting such a deadline. Stewart had a reasonable amount of time (with three written notices of the 2/21 deadline on 2/13, 18 & 19) to enter into a joint venture with KCA by 2/21. In addition, Stewart had a total of 1 ½ months, from his acceptance on 1/8/03 until the 2/21/03 deadline, to finalize the joint venture with KCA. Stewart apparently made a conscious decision not to, effectively removed himself.

These events in January and February of 2003 did not occur in a vacuum. This was not just about Stewart. BEP was also rightly concerned with Kelly managing two large dining hall facilities hundreds of miles apart. And BEP and Kelly had just begun at Maxwell for the very first

> time. BEP was responsible for seeing both dining hall facilities were properly managed, not just Redstone. Redstone was no more and no less important than Maxwell.
>
> Stewart contends it was impossible for him to do a deal with KCA from, at least, 2/18 when Anderson told Stewart that KCA would not work with Stewart on operating this facility. That may be true. This position of KCA was apparently due in large part to the fixed price contract with the Army at Redstone until renegotiation and renewal in 2004 or 2005. KCA was perfectly within its rights to take such a position. There is nothing in the Act, its regulations, or the record in this case that required KCA to do business with Stewart, and only Stewart.
>
> Any and all other contentions, arguments and claims of the Complainant have been fully and carefully considered by the panel and have been found insufficient based on the evidence and record in this matter.

AWARD

> The claims of the Complainant are denied.

* * * * *

*Standard of Review*

Stewart's appeal of the DOE's final action is subject to the review provisions of the Administrative Procedures Act ("APA"), specifically, Chapter 7, Title V of the United States Code. 20 U.S.C. § 107d-2(a). 5 U.S.C. § 706 provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> > (1) compel agency action unlawfully withheld or unreasonably delayed; and
> >
> > (2) hold unlawful and set aside agency action,

>     findings, and conclusions found to be—
>
>     (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
>     (B) contrary to constitutional right, power, privilege, or immunity;
>
>     (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
>     (D) without observance of procedure required by law;
>
>     (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>
>     (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

The Eleventh Circuit has explained that "[i]n determining whether a regulation is arbitrary and capricious, the scope of review is narrow: a reviewing court's 'task is limited to determining whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Florida Fruit & Vegetable Ass'n v. Brock*, 771 F.2d 1455, 1459 (11th Cir. 1985) (citing *Ryder Truck Lines, Inc. v. United States*, 716 F.2d 1369, 1378 (11th Cir. 1983)).

*Summary Judgment Standard*

Rule 56(b), Fed. R. Civ. P., provides a mechanism by which a defendant "may, at any time move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." "The summary judgment procedure is particularly appropriate in cases in which the court is asked to review . . . a decision of a federal administrative agency." (citing Wright, Miller & Kane, *Federal Practice And Procedure*: Civil 2d § 2733, Vol. 10A at 366 (1983)). Rule 56 is a useful mechanism in cases such as this one, because the record is automatically complete when the action arrives in federal court. See *id.* ("[I]n reviewing an agency rulemaking, the court considers the record that was before the agency, and that record is before the court") (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *Ryder Truck Lines, Inc. v. United States*, 716 F.2d 1369, 1378 (11th Cir. 1983)). Stewart, who is *pro se*, fails to understand the scope of this court's authority and wants a *de novo* consideration.

*Discussion*

In their opposition to Stewart's motion to amend pleadings, which the court has deemed to be a Rule 56 motion, defendants contend that there are no grounds to reverse the arbitration panel's determination under the applicable standard of review. As defendants point out, Stewart does not even argue that the findings

of the arbitration panel were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Instead, he essentially seeks a second (or third) bite at the apple by making the same allegations in this court that he made in his administrative complaint with the DOE, and asks this court to substitute its judgment for that of the arbitration panel. This is something the court is not permitted to do. *North Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1539 (11th Cir. 1990) ("The reviewing court is not authorized to substitute its judgment for that of the agency concerning the wisdom or prudence of the proposed action"). Just as Stewart has not attempted to show how the arbitration panel's findings should be reversed under the proper standard of review, the court is unable to detect anything from the administrative record that suggests that the panel acted arbitrarily or capriciously, abused its discretion, or did not act in accordance with the law. Accordingly, defendant's motion for summary judgment will be granted.

DONE this 28th day of June, 2007.

/s/ William M. Acker, Jr.
_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE